THE NORTH CAROLINA STATE BAR, Plaintiff v. DAVID H. ROGERS, Defendant

No. COA03-706

(Filed 1 June 2004)

## 1. Attorneys— discipline—selection of members of DHC—no due process violation

The selection process for members of the Disciplinary Hearing Commission of the North Carolina State Bar did not deprive defendant of a fair tribunal and did not violate due process.

## 2. Administrative Law— State Bar disciplinary proceeding—specific process provided

Defendant was not entitled to application of the Administrative Procedure Act to his State Bar disciplinary proceeding. The APA is a statute of general applicability and does not apply where the legislature has provided a more specific administrative process.

## 3. Attorneys— discipline—severance of claims

The denial of defendant's motion to sever two matters before the Disciplinary Hearing Commission of the North Carolina State Bar was not an abuse of discretion. Defendant did not assign error to the DHC's conclusion that its findings and conclusions about the second matter were independent of its findings and conclusions about the first.

## 4. Attorneys— discipline—combined claims—single case

There was no error where a defendant before the State Bar claimed that the DHC erroneously combined two cases which were filed more than ninety days apart, but the State Bar instead filed an amended complaint adding a second claim in a single case.

**5. Attorneys— discipline—admissibility of prior convictions and a prior suspension**

Evidence of prior convictions and a prior suspension of defendant's law license twenty years earlier was properly admitted in a hearing before the State Bar where the evidence was admitted as a factor in aggravation rather than to impeach defendant's credibility. N.C.G.S. § 8C-1, Rule 609 was not applicable.

**6. Attorneys— discipline—warning letter—disclosure to DHC—within three years**

A warning letter from the State Bar to a lawyer was properly considered in determining disciplinary sanctions where the complaint was filed three years to the day after issuance of the warning and so was within the DHC rule for use of such letters. Defendant waived a further argument regarding use of the letter in an amended claim by not raising it below.

**7. Attorneys— discipline—refusal to acknowledge wrongdoing**

An attorney's refusal to acknowledge his wrongdoing to the State Bar was not used to punish him unconstitutionally for exercising his right to a trial. The purpose of sanctions is to protect the public and the profession, and the presence or absence of remorse is highly relevant. Moreover, aggravating and mitigating factors are considered only after misconduct is established.

**8. Attorneys— discipline—deposition expenses as costs**

The Disciplinary Hearing Commission of the North Carolina State Bar did not abuse its discretion by assessing deposition expenses as costs.

**9. Attorneys— discipline—appellate review**

Direct appeal from the State Bar to the Court of Appeals is not facially unconstitutional. The general mandates of the Administrative Procedure Act are not applicable because the Legislature has provided a specific procedure.

Appeal by defendant from an order entered 10 January 2003 by the North Carolina State Bar. Heard in the Court of Appeals 2 March 2004.

*Deputy Counsel Thomas F. Moffitt and Dottie Miani for plaintiff-appellee.*

*David H. Rogers, defendant-appellant, pro se.*

HUNTER, Judge.

David H. Rogers ("defendant") appeals from an order of the Disciplinary Hearing Commission of the North Carolina State Bar ("DHC") filed 10 January 2003, suspending defendant's license to practice law for three years. For the reasons stated herein, we conclude there was no error in defendant's disciplinary hearing and affirm the order of discipline.

On 25 July 2001, the North Carolina State Bar ("the State Bar") filed a complaint against defendant alleging the facts of the "Flanagan Matter" set out below. Defendant filed his answer on 4 September 2001. Subsequently, on 6 June 2002, the State Bar filed an amended complaint, which in addition to the "Flanagan Matter," alleged the facts of the "Hayes Matter" also set out below.

Defendant does not assign error to the DHC's findings of fact and they are, therefore, deemed binding on appeal. *See Watson v. Employment Security Comm.*, 111 N.C. App. 410, 412, 432 S.E.2d 399, 400 (1993). In summary, the DHC found the following as fact. Defendant was admitted to the State Bar in 1979 and was engaged in the practice of law in Raleigh, North Carolina. He was properly served with process and received notice of the hearing. The allegations against defendant involved two separate incidents.

### The Hayes Matter

Defendant purchased a house next door to the Hayes residence in 1971. Some time during that decade, defendant planted a birch tree in a strip of grass between the two properties. In July 2000, the Hayes hired a surveyor to mark the property line in order to erect a fence and plant a hedgerow. The surveyor placed stakes along the property line, which indicated that the birch tree was actually planted on the Hayes' property. Defendant removed the stakes and in September 2000 sent a letter to his neighbors stating he had acquired the property around the birch tree by adverse possession and that if the Hayes insisted on erecting the fence on that property, he would file a civil lawsuit.

However, defendant, in July 2000, had recorded a deed purporting to convey his interest in his property to his children. At no time did Rogers inform the Hayes of this purported transfer. When the Hayes, through counsel, challenged defendant's claim of adverse possession, noting the deed to his children, defendant responded that it was, in fact, his children who were claiming adverse possession and that he

was acting as their attorney. Not only had defendant's children not made any claim of adverse possession, they were unaware of the conveyance of the property to them and had not authorized defendant to act as their attorney.

In the Hayes' subsequent quiet title action, after receiving an answer from defendant's children denying they were making any claim of adverse possession, the Hayes amended their complaint to include defendant and properly served him with the summons and complaint. Defendant, nevertheless, filed a motion to dismiss the suit based upon insufficiency of process and service of process. The trial court in that case denied defendant's motion and ordered him sanctioned under Rule 11 of the Rules of Civil Procedure for filing the motion to dismiss for improper purposes.[1]

Flanagan Matter

In October 1999, Yolanda Flanagan contacted defendant about representing her regarding problems with a residential property sales contract. Flanagan had contracted to sell real property to a Michael Assad, in which the mortgage on the property was to be left in Flanagan's name until closing, but paid by Assad. Assad subsequently failed to make the required payments.

Flanagan told defendant that her primary objectives were selling the property and being free and clear of it, and ensuring the mortgage holder did not foreclose on the property. Defendant advised Flanagan that Assad would never qualify for a mortgage and that she should file a breach of contract action against him. Assad did qualify for a mortgage and Assad's attorney scheduled a closing to consummate the sale of the property. Defendant did not respond to telephone calls or letters sent to him by Assad's attorney about the closing. After receiving these letters and phone calls, defendant sent a complaint to Flanagan for her verification, without informing her that Assad had qualified for a mortgage or that a closing date had been set.

The closing date was rescheduled, again without Flanagan being informed and Flanagan returned the verified complaint to defendant, who continued to insist that she pursue the breach of contract action. The lawsuit was filed and events continued along the same pattern: the closing would be rescheduled and defendant would fail to inform Flanagan. Ultimately, Flanagan discovered from other sources that a

---

1. This Court upheld the denial of the motion and the imposition of sanctions in an unpublished opinion. *Hayes v. Rogers*, 155 N.C. App. 220, 573 S.E.2d 775, 2002 N.C. App. LEXIS 1698 (filed 31 December 2002) (unpublished).

closing date had been set and that Assad had qualified for a mortgage, but defendant dismissed those reports advising Flanagan to proceed with the lawsuit. When Flanagan later asked how the suit was proceeding, and defendant told her Assad had not yet been served with the complaint, Flanagan insisted the lawsuit be dropped and the sale consummated. Defendant replied that he "didn't do closings." Defendant terminated his representation and demanded that Flanagan pay him $1,425.00 in addition to the flat fee Flanagan had already paid. The DHC found this would have resulted in defendant collecting twice for services for which he had already been paid, and at an inflated hourly rate of $180.00 per hour.

Based on these findings, the DHC concluded that defendant's conduct constituted grounds for discipline. The Commission further found as aggravating factors: prior disciplinary offenses; dishonest or selfish motive; a pattern of misconduct; multiple offenses; submission of false evidence, false statements, or other deceptive practice during the disciplinary process; refusal to acknowledge the wrongful nature of the conduct; and, substantial experience in the practice of law. The DHC found that the remoteness of defendant's prior disciplinary offenses mitigated that aggravating factor, but that the aggravating factors substantially outweighed the one mitigating factor.

The issues presented by defendant on appeal to this Court are whether (I) the DHC constitutes an illegal and improper tribunal in violation of defendant's due process and equal protection rights; (II) the DHC properly denied his motion for separate hearings; (III) the DHC improperly joined for trial two separate complaints filed more than ninety days apart; (IV) the DHC erred in allowing evidence during the disciplinary phase of the hearing (A) of two prior misdemeanor convictions, and (B) of a prior letter of warning from the State Bar; (V) use of the aggravating factor that defendant failed to acknowledge the wrongfulness of his actions violates defendant's constitutional rights; (VI) the DHC erred in awarding· costs assessed against defendant; (VII) N.C. Gen. Stat. § 84-28(h), requiring appeal from DHC decisions directly to this Court is facially unconstitutional as it denies defendant an appeal to the state superior courts.

I.

[1] Defendant first contends that the composition of the DHC results in a trial in front of a biased decision maker, as the members of the DHC are "hand-picked" by the State Bar, the plaintiffs in the

N.C. STATE BAR v. ROGERS

[164 N.C. App. 648 (2004)]

case against him, denying defendant due process of law. Instead, he maintains, he should have had a hearing before an administrative law judge under the Administrative Procedures Act, N.C. Gen. Stat. § 150B-1, *et seq.* (2003) ("the APA"). We conclude these contentions are without merit.

A license to practice law constitutes a property interest that cannot be taken away without due process of law. *In re Lamm*, 116 N.C. App. 382, 385, 448 S.E.2d 125, 128 (1994), *per curiam aff'd*, 341 N.C. 196, 458 S.E.2d 921 (1995). "The fundamental premise of procedural due process protection is notice and the opportunity to be heard." *Peace v. Employment Sec. Comm'n*, 349 N.C. 315, 322, 507 S.E.2d 272, 278 (1998). Furthermore, " '[a] fair trial in a fair tribunal is a basic requirement of due process.' " *Crump v. Bd. of Education*, 326 N.C. 603, 613, 392 S.E.2d 579, 584 (1990) (quoting *In re Murchinson*, 349 U.S. 133, 136, 99 L. Ed. 942, 946 (1955)).

Defendant's contention that the DHC is "hand-picked" by the State Bar is flawed. The DHC is actually selected by a combination of the State Bar Council, the Governor, and the Legislature. At the time of defendant's hearing, the State Bar Council, which is the governing body of the State Bar, *see* N.C. Gen. Stat. § 84-17 (2003), selected the ten lawyer members of the DHC, the Governor selected three non-lawyer members and the Legislature selected two non-lawyer members, *see* N.C. Gen. Stat. § 84-28.1(a) (2001).[2] The Chair of the DHC then assigns DHC members to the individual hearing committees, which hear complaints. *See* 27 N.C.A.C. 1B.0108(a)(2) (July 2003). Thus, the State Bar, itself, has no role in selecting the DHC or the particular hearing committee chosen to hear defendant's case. Furthermore, neither the DHC nor the particular hearing committee receives any compensation from the State Bar. Instead, by statute, the DHC members receive the same per diem and travel expenses as authorized for members of State Commissions, *see* N.C. Gen. Stat. § 84-28.1(c), which are paid from the funds of the State Treasury, *see* N.C. Gen. Stat. § 138-5 (2003). Thus, we reject defendant's argument that he has been deprived of a fair tribunal in violation of due process by the selection process of DHC members.

---

2. This statute was amended effective 1 October 2003 to provide for twenty members of the DHC, twelve lawyer members selected by the State Bar Council, four non-lawyer members selected by the Governor and four non-lawyers selected by the General Assembly. *See* N.C. Gen. Stat. § 84-28.1(a) (2003).

[2] We also reject defendant's contention that he should be entitled to a hearing before an administrative law judge under the APA.[3] The APA is a statute of general applicability, and does not apply where the Legislature has provided for a more specific administrative procedure to govern a state agency. *See Empire Power Co. v. N.C. Dept. of E.H.N.R.*, 337 N.C. 569, 586-87, 447 S.E.2d 768, 778-79 (1994). The Legislature has expressly and specifically given the State Bar Council and DHC the power to regulate and handle disciplinary proceedings of the State Bar. *See* N.C. Gen. Stat. § 84-28 (2003) (powers of the State Bar Council to discipline attorneys); N.C. Gen. Stat. § 84-28.1 (disciplinary hearing commission powers). As such, defendant is not entitled to application of the APA to his State Bar disciplinary proceeding in this case.

II.

[3] Defendant next argues it was error for the DHC to deny his motions seeking to sever the Hayes matter and the Flanagan matter into separate hearings. Proceedings before a hearing committee are governed "as nearly as practicable" by the North Carolina Rules of Civil Procedure. 27 N.C.A.C. 1B.0114(n) (July 2003). The chair of the hearing committee has the power to dispose of any non-dispositive pretrial motions. Under Rule 42(b) of the North Carolina Rules of Civil Procedure, a trial court may order separate trials of claims in the furtherance of convenience or to avoid prejudice. *See* N.C. Gen. Stat. § 1A-1, Rule 42(b) (2003). The decision to sever a trial is left to the sound discretion of the trial court. *See Wallace v. Evans*, 60 N.C. App. 145, 149, 298 S.E.2d 193, 196 (1982).

In this case, defendant contends that he was prejudiced by the failure to sever the claims due to the " 'spill-over' effect" of his culpability in one case to the other. The DHC, however, expressly concluded that it "made its findings and conclusions regarding the second claim for relief involving Flanagan independent of its findings and conclusions regarding the first claim for relief involving the Hayeses." Defendant has not assigned error to this conclusion. We therefore conclude there was no abuse of discretion on the part of the DHC in denying defendant's severance motion.

---

3. This contention appears to be the basis for defendant's claim that a hearing before the DHC violated his equal protection rights, presumably because disciplinary hearings for other state agencies are conducted under the APA. Defendant, however, does not argue the constitutional ramifications of this distinction in his brief to this Court and we decline to address it further.

III.

**[4]** Defendant also contends that the DHC erred in combining two separate cases for trial that were filed more than ninety days apart. The chairperson of the DHC has the authority to consolidate two or more cases filed within ninety days of each other. 27 N.C.A.C. 1B.0108(a)(5). In this case, however, the chair of the DHC did not consolidate two separate cases, instead the State Bar filed an amended complaint in a single case to add a second claim for relief and, therefore, 27 N.C.A.C. 1B.0108(a)(5) is inapplicable.

IV.

Defendant next asserts that the trial court erred in the dispositional phase of the hearing by not granting his motion *in limine* to exclude evidence of his twenty-year-old prior convictions under Rule 609 of the Rules of Evidence and by considering a letter of warning issued to defendant in 1998.

A.

**[5]** Rule 609 allows for evidence of a witness's prior convictions to be used to attack the credibility of the witness. *See* N.C. Gen. Stat. § 8C-1, Rule 609(a) (2003). With certain limited exceptions, evidence of a conviction that is more than ten years old may not be used to impeach the witness. *See* N.C. Gen. Stat. § 8C-1, Rule 609(b). In this case, defendant contends the introduction into evidence of two misdemeanor convictions from approximately twenty years earlier, as a result of which defendant's law license was suspended, was error in violation of Rule 609(b).

The evidence of defendant's prior convictions was, however, not admitted as impeachment evidence, but rather as evidence of an aggravating factor to defendant's misconduct in the present case. The DHC hearing committee has the authority to consider aggravating factors in imposing discipline, including the existence of prior disciplinary offenses. *See* 27 N.C.A.C. 1B.0114(w)(1)(A). The State Bar was not introducing evidence that defendant's law license was judicially suspended as a result of two misdemeanor convictions to impeach his credibility, but rather as evidence of a factor in aggravation to be considered by the hearing committee in setting defendant's discipline. Thus, Rule 609 is inapplicable, and the evidence of defendant's prior convictions and suspension of his law license was admissible as evidence of an aggravating factor.

B.

**[6]** Defendant contends that the DHC should not have been allowed to consider a letter of warning issued to him on 25 July 1998. The complaint in this case was filed 25 July 2001. Defendant contends that admission of this letter violated the DHC's rule that a letter of warning may only be disclosed to the committee if the letter was issued within three years of the present complaint. Defendant specifically argues that as three years is the equivalent of 1,095 days, because the intervening year 2000 was a leap year, 1,096 days had actually passed between the issuance of the letter of warning and the filing of the complaint. We reject this argument. It is apparent from the record that the complaint in this case was filed three years to the day after the issuance of the letter of warning. Thus, the letter of warning was properly considered in determining disciplinary sanctions against defendant.

Defendant alternatively argues that even if the letter of warning was properly admitted as evidence of an aggravating factor in the claim contained in the original 25 July 2001 complaint, it should not be considered as an aggravating factor in the Hayes matter, which was the additional claim alleged in the amended complaint filed by the State Bar on 6 June 2002. Defendant, however, did not raise this argument below, and has therefore waived it on appeal. *See* N.C.R. App. P. 10(b)(1).

V.

**[7]** Defendant also contends that the aggravating factor that he refused to acknowledge the wrongful nature of his conduct is unconstitutional because it punishes him for exercising his right to a trial. We disagree.

Initially, we note that the stated purpose of the imposition of sanctions on attorneys found guilty of misconduct is not punitive, but rather to protect the public, the courts, and the legal profession. *See* 27 N.C.A.C. 1B.0101 (July 2003). Consideration of a defendant's remorse and recognition of his wrongful conduct is highly relevant in determining the sanction that should be imposed to best protect the public, the courts, and the legal profession from continued misconduct.

Furthermore, nothing in the rules of the DHC indicates that this aggravating factor has as its purpose to punish a defendant for exercising his right to a hearing. To the contrary, the rules of the

DHC presume that only following the establishment of misconduct, does the committee consider evidence both in aggravation and mitigation, including failure to acknowledge the wrongfulness of the conduct or remorse. *See* 27 N.C.A.C. 1B.0114(w). Thus, after being found guilty of misconduct, a defendant still has the opportunity to acknowledge that his conduct was indeed wrongful. Moreover, defendant in this case has failed to make any showing in the record that the use of the aggravating factor was unconstitutionally applied to him by the committee.

## VI.

[8] Next defendant asserts it was error to assess deposition expenses as costs against him. We disagree. A trial court has discretion to assess necessary deposition expenses as costs. *See Alsup v. Pitman*, 98 N.C. App. 389, 390-91, 390 S.E.2d 750, 751 (1990). In this case, we discern no such abuse of discretion. *See Lewis v. Setty*, 140 N.C. App. 536, 540, 537 S.E.2d 505, 507-08 (2000).

## VII.

[9] Defendant finally contests the facial constitutionality of N.C. Gen. Stat. § 84-28(h) providing for direct appeal from DHC determinations to this Court. Defendant argues this is in violation of the procedures under the APA, and therefore deprives him of due process by bypassing review by a superior court judge as required under the APA. As we have already noted, however, the provisions of the APA are generally inapplicable to the procedure of a DHC hearing and subsequent appeals because the Legislature has provided for a specific procedure to be followed rather than the general mandates of the APA. Moreover, " '[n]o appeal lies from an order or decision of an administrative agency of the State or from judgments of special statutory tribunals whose proceedings are not according to the course of the common law, unless the right is granted by statute.' " *Empire Power Co.*, 337 N.C. at 586, 447 S.E.2d at 778 (quoting *In re Assessment of Sales Tax*, 259 N.C. 589, 592, 131 S.E.2d 441, 444 (1963)). Thus, defendant has no right of appeal from the DHC decision, except to this Court pursuant to the express provision of N.C. Gen. Stat. § 84-28(h).

Affirmed.

Judges WYNN and TYSON concur.